UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY WHITEHEAD RILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14 C 2407 |
| | ) | |
| CITY OF CHICAGO, ILLINOIS; and | ) | JUDGE ELLIS |
| CHICAGO POLICE OFFICER ANDREW | ) | |
| SCUDELLA, Star No. 16384; CHICAGO | ) | |
| POLICE OFFICER RYAN HARTY, | ) | |
| Star No. 17757; CHICAGO POLICE | ) | |
| OFFICER STEVE JAROSZ, Star No. 6803, | ) | |
| and TWO UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS COMPLAINT

Plaintiff Kimberley Whitehead Riles, by and through her attorneys, Jeffrey B. Granich and Katie Z. Ehrmin, submits the following response to Defendants' Motion to Dismiss her Complaint and states as follows:

I. INTRODUCTION/STATEMENT OF THE CASE

Plaintiff Kimberly Whitehead-Riles filed this lawsuit under 42 U.S.C. § 1983 due to violations of her constitutional rights by Defendant Officers on September 25, 2013 in that the Defendant Officers unlawfully seized and arrested Plaintiff, unlawfully searched her vehicle, used excessive force against her, failed to intervene in preventing the constitutional violations against her and conspired against her. Plaintiff additionally brings claims of intentional infliction of emotional distress and *respondeat superior* under Illinois law. In response, Defendant Officers and City of Chicago seek to dismiss Plaintiff's complaint on the grounds that it fails to state any valid causes of action. Defendants' arguments have no merit. Accordingly, Defendants' motion should be denied.

## II. FACTUAL BACKGROUND

Kimberley Whitehead-Riles is a 45-year-old African-American resident of Chicago, Illinois. (Dkt. 1, ¶ 4). Ms. Whitehead-Riles is a security guard who is employed with Andy Frain Security. On the date of the incident, Plaintiff's son, Deaven Riles, used Plaintiff's vehicle to pick her up from work and drive her home. (Dkt. 1, ¶ 7). At the time of the incident, Deaven Riles' license was suspended, a fact that neither of them were aware of at the time. The vehicle operated by Plaintiff's son and in which Plaintiff was a passenger was curbed for an alleged minor traffic violation. (Dkt. 1, ¶ 8). Deaven Riles pulled the vehicle to the side of the road. One of the Defendant Officers approached the vehicle and asked Plaintiff and her son for their license. (Dkt. 1, ¶ 9). Both Plaintiff and her son gave their licenses to the Defendant Officer. (Dkt. 1, ¶ 9). A short time later, one or more of the Defendant Officers ordered both Plaintiff and her son to exit the vehicle and place their hands on the back of the vehicle operated by Plaintiff's son. (Dkt. 1, ¶ 10).

One or more of the Defendant Officers proceeded to search the vehicle. (Dkt. 1, ¶ 11). No consent was given to search the vehicle by Plaintiff or her son. (Dkt. 1, ¶ 14). During the search, one or more of the Defendant Officers asked Plaintiff or her son where drugs could be found in the vehicle. Plaintiff and her son replied that there were no drugs. The search lasted approximately twenty minutes. One of the Defendant Officers then proceeded to handcuff Deaven Riles and place him in the rear of a police vehicle while plaintiff was still standing near the back of her vehicle with her hands on the vehicle. (Dkt. 1, ¶ 11, 12). One of the Defendant Officers proceeded to enter the driver's seat of Plaintiff's vehicle and proceed to drive away from the scene in her vehicle. (Dkt. 1, ¶ 12). This caused Plaintiff to fall to the ground and hit her head. (Dkt. 1, ¶ 13). She lost consciousness. (Dkt. 1, ¶ 13). When she regained consciousness, she was in a hospital. (Dkt. 1, ¶ 13). Deaven Riles witnessed his mother fall to the ground and alerted the Defendant Officers to this fact. At no time during this incident, did the Defendant Officers have a valid search warrant or arrest warrant for Plaintiff, her son Deaven Riles, or her vehicle. (Dkt. 1, ¶ 14).

2

### III. STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must draw all reasonable inferences in Ms. Whitehead-Riles' favor, construe the allegations of the complaint in the light most favorable to her, and accept as true all of the Complaint's well-pleaded allegations. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). "To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Here, Ms. Whitehead-Riles has not pleaded simply the possibility that Defendants acted unlawfully; rather, she has pleaded specific facts demonstrating Defendants' unlawful conduct. Accordingly, Ms. Whitehead-Riles' Complaint has met the requisite level of factual detail to survive Defendants' motion.

### IV. ARGUMENT

#### I. Plaintiff has alleged sufficient facts to establish Counts I-V of her Complaint

Defendants argue that Plaintiff's complaint should be dismissed for being non-specific and vague. However, Plaintiff has sufficiently pled the facts necessary to state a cause of action against the Defendant Officers and Defendant City and comports with the pleading requirements contained in Fed.R.Civ.Pro. 8. In order to state a cognizable claim under § 1983, Plaintiff must allege that a government official, acting under color of state law, deprived her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Christensen v. County of Boone, IL.,*

3

483 F.3d 454 (7th Cir. 2007). Like other federal claims, §1983 actions are subject to the notice pleading requirements provided for in Fed.R.Civ.Pro. 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this notice pleading standard, specific facts are not necessary, and all that need be specified is the bare minimum facts necessary to put the Defendant on notice of what the claim is and the grounds upon which is rests so that he can file an answer. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007); *Beanstalk Group, Inc. v. AN General Corp.,* 283 F.3d 856, 863 (7th Cir. 2002). A complaint should not be dismissed on the ground that it is conclusory or fails to allege facts since the federal rules only require, with some irrelevant exceptions, that the complaint state a claim. *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002) citing *Nance v. Vieregge,* 147 F.3d 589, 590-91 (7th Cir. 1998).

**A. Plaintiff's False Arrest/Seizure Claim**

In Count I of her Complaint, Plaintiff alleges a False Arrest/Seizure Claim in violation of the 4th and 14th Amendments to the United States Constitution. Plaintiff specifically alleges in her Complaint that she was in a vehicle that was curbed by the Defendant Officers for an alleged minor traffic violation, that she was ordered to produce a Driver's License, that she was ordered out of the vehicle, that she was ordered to place her hands upon the vehicle, that she remained there while the Defendant Officers searched her vehicle without her consent, and that one of the Defendant Officers entered her vehicle and drove away in it while Plaintiff was still standing with her hands placed on the vehicle. (Dkt. 1, ¶¶, 7-12 ).

Defendants argue in their motion that they Defendant Officers had probable cause to stop the vehicle operated by Plaintiff's son, Deaven Riles, and therefore, no false arrest occurred. Defendant ignores the rest of the facts in the Complaint that establish both a false arrest and an unreasonable seizure in violation of the 4th Amendment (as summarized in the preceding paragraph).

The Defendant Officers' show of authority and detention of Plaintiff prevented her from leaving the scene. A person has been "seized" or arrested within the meaning of the Fourth Amendment, in

view of the circumstances surrounding the incident, if a reasonable person would believe he was not free to leave. *Brendlin v. California*, *U.S. v. Tyler*, 512 F.3d 405, 409-410 (7th Cir. 2008). A seizure of a person occurs for purposes of the Fourth Amendment when a police officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen. *Id.* An arrest occurs for example, where an officer draws his or her gun, orders an individual to move or stay in a particular place, or handcuffs or restrains a person for a long period of time. *U.S. v. Ienco,* 182 F.3d 527, 525 (7th Cir. 1999),

Here, Plaintiff Kimberley Whitehead-Riles was arrested or "seized" within the meaning of the 4th Amendment when she was curbed in her vehicle in which she was a passenger, ordered to produce identification, ordered to exit her vehicle, ordered to place her hands on her vehicle, continued to be seized while the Defendant Officers searched her vehicle, and then left on the side of the road alone after the Defendant Officers drove off in her vehicle.

The Seventh Circuit Court of Appeals has held that '[a]n officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person…and thus must be reasonable under the circumstances." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014) The Court further states that "[i]n order to stop [the plaintiff], [the defendant officer] must have had a reasonable articulable suspicion that they had committed, were committing, or were about to commit an offense." *Id.* In the matter before this Court, no such reasonable articulable suspicion exists.

The Court goes on to deal with the arrest of the Plaintiff in *Huff,* stating that "[a] traffic stop can be converted into a full-blown arrest if it extends beyond the time reasonably necessary to complete the purpose for which the stop was made," and that "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business'" *Id.* at 1006 (*quoting Florida v. Bostick,* 501 U.S. 429, 436-37, (1991).

In *Huff,* the officer curbed the vehicle operated by the plaintiff claiming that the vehicle

5

had crossed the white divider line without signaling. *Id.* at 1002. The Officer gave plaintiff a written warning, conducted a pat-down of plaintiff and his passenger, conducted a canine search of the exterior of the vehicle and a thorough search of the car's interior. Plaintiff was given a written warning and was told by the Officer that he and his passenger were free to leave. *Id.* at 1003. Plaintiff and his passenger sued alleging an unreasonable seizure, false arrest, unreasonable search of their persons, and unreasonable search of their car. The Seventh Circuit Court of Appeals denied the Officers' motion for summary judgment based on qualified immunity.

In the matter before this Court, Ms. Whitehead-Riles did not feel free to leave and no reasonable person would feel free to leave under the circumstances. Plaintiff was ordered to produce identification, ordered out of the vehicle, ordered to place her hands on the vehicle, asked incriminating questions without any basis or reason to believe that any contraband existed in the vehicle, remained in such a position while the Defendant Officers searched her vehicle without any lawful justification or consent, and finally left injured on the ground after at least one Defendant Officer placed her son into a police vehicle and one other Defendant Officer drove off in her vehicle. (Dkt. 1, ¶¶, 7-12 ). Plaintiff was essentially stranded and injured by the Defendant Officers. Prior to the Defendant Officers leaving her on the ground, injured, and without transportation, she did not feel free to leave, nor would any reasonable person in such circumstances feel they could leave. Plaintiff was seized and under arrest during the encounter with Defendant Officers. The United States Supreme Court has held that a passenger of an automobile that is pulled over for a traffic stop by officers is "seized" under the Fourth Amendment from the moment the vehicle comes to a halt on the roadside and is thus able to challenge the constitutionality of the stop. *Brendlin v. California*, 552 U.S. 249, 254 (2007) Furthermore, the Court acknowledged that any reasonable person in such a traffic stop does not feel free to depart without police permission. *Id.* at 255-56.

While Ms. Whitehead-Riles concedes that her son, Deaven Riles, was operating the vehicle at the time of the stop while his license was revoked, the Defendant Officers' actions in

ordering her out of the vehicle, ordering her to remain standing with her hands on the vehicle, searching the vehicle, inquiring whether she had contraband in the vehicle, and stranding her on the street injured and without transportation of any kind exceeded any justifiable actions by the Defendant Officers and violated Plaintiff's constitutional right against unreasonable search and seizure.

In *Arizona v. Gant,* the United States Supreme Court held that "police [may] search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant,* 556 U.S. 332, 344 (2009) Here, both Plaintiff and her son were ordered out of the vehicle and ordered to place their hands on the back of Plaintiff's vehicle. The Defendant Officers, in fact, conducted a search of the vehicle *prior to* placing Deaven Riles into a police vehicle. There was no justifiable basis for the search of the vehicle and there was no justifiable basis to detain Plaintiff while conducting the illegal search of the vehicle.

In *Arizona v. Gant,* the Court acknowledged that under some circumstances a search of a vehicle for relevant evidence of the crime for which an occupant will be justified. *Id.* at 343-344. In *Gant*, however, the Court concluded that where the driver of the vehicle is arrested for driving on a suspended license, the officers could not expect to find evidence in the passenger compartment of the vehicle. *Id.* at 344.

In the matter before this Court, because neither Plaintiff nor her son had access to the car at the time of the search, nor could the Defendant Officers have found evidence of the offense for which Deaven Riles was arrested, the search was unreasonable under *Gant*. The fact that the search was unreasonable makes the seizure and arrest of Plaintiff unreasonable as well.

**B. Plaintiff's Unlawful Search Claim**

Ms. Whitehead-Riles' vehicle, a 2005 Chevy Cobalt, operated by her son Deaven Riles at the time of the incident, was searched unlawfully and in violation of Plaintiff's Fourth Amendment

7

right to be free from an unlawful search.

The Supreme Court, in *Arizona v. Gant,* held that officers may search a vehicle incident to an arrest only for the purpose of "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy". *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, the arrestee was handcuffed and placed in a police vehicle under arrest for driving on a suspended license, prior to the officers searching his vehicle. The Court held that as the plaintiff was charged for driving with a suspended license, the police could not expect to find evidence of such a crime in the passenger compartment of his car. *Id.* at 345. The Court concluded that "[b]ecause police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable." *Id.*

Like the plaintiff in *Gant*, Ms. Whitehead-Riles and her son were both ordered to exit the vehicle following the stop and place their hands on the Chevy Cobalt, before Deaven Riles was charged with driving on a revoked license. The Defendant Officers in this matter searched the vehicle while both Plaintiff and her son were still standing at the rear of the vehicle as ordered. (Dkt. 1, ¶, 11).Because Ms. Whitehead-Riles and her son were out of the car, Defendants cannot claim that the search of the vehicle was done for officer safety or to safeguard any evidence that Plaintiff or Deaven Riles might destroy. At the time of the search, Plaintiff nor her son had access to the vehicle and furthermore, Deaven Riles had not yet been charged with any crime.

**C. Plaintiff's Excessive Force Claim**

Defendants claim in their motion that Plaintiff failed to allege any facts detailing "when or what kind of excessive force was allegedly committed. Not one of Plaintiff's factual assertions supports a claim for excessive force." *See Defendant's Motion to Dismiss Plaintiff's Complaint, p. 7.* As stated in the complaint, Plaintiff was standing with her hands on her vehicle as she was ordered to do by the Defendant Officers, when one of the Defendant Officers entered her vehicle, and drove

away. (Dkt. 1, ¶, 12). This caused Plaintiff to fall and sustain injuries. She was taken to John H. Stroger Hospital of Cook County by the City of Chicago Fire Department where she was treated for her serious injuries. (Dkt. 1, ¶, 13).

At the time of the stop, Plaintiff was cooperative and never posed a threat to any of the police officers, and thus, the use of force was not justified. A court determines whether an officer used excessive force in effectuating an arrest based on a standard of "objective reasonableness," meaning, "the perspective of a reasonable officer on the scene, rather than 20/20 vision hindsight." *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). A police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of arrest, the officer used greater force than necessary to make the arrest. *Payne v. Pauly*, 337 F.3d 767, 778 (7th Cir. 2003). The specific facts a court should consider include the severity of the time at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade the arrest by flight. *Id.* The Seventh Circuit has held on many occasions that summary judgment in excessive force cases should be granted sparingly.

The use of force has been held unreasonable when the police twisted a detained person's arms, shoved him against a wall, and took him to the floor when the plaintiff did not pose a threat to the officers and was cooperative and docile. *Morfin v. City of East Chicago,* 349 F.3d 989 (7th Cir. 2011). It is clearly established that "police officers do not have the right to shove, push or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

The United States Supreme Court has held that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention of taking." *Brower v. County of Inyo,* 489 U.S. 593, 596 (1989). In *Brower,* decedent's heirs brought a claim under 42 U.S.C. § 1983 claiming that officers used excessive force in establishing a roadblock and thus effected an unreasonable seizure which

9

killed the decedent. *Id.* at 594. The Court held that the claim was proper and that decedent's heirs could claim "the right to recover for [decedent's] death only because the unreasonableness they allege consists precisely of setting up the roadblock in such manner as to be likely to kill him." *Id.* at 599.

Here, the detention of Ms. Whitehead-Riles was an intentional act by one of the Defendant Officers directed against Plaintiff that resulted in a physical interference with her movement. Accordingly, the facts here support both elements of a Fourth Amendment claim necessary to anchor Plaintiff's claim of excessive force: (1) a seizure, which was (2) unreasonable under the circumstances. In the course of this seizure, Plaintiff sustained physical and emotional injuries. Thus, there are ample facts to support Plaintiff's excessive force claim, and Defendants' motion should therefore be denied.

Ms. Whitehead-Riles alleges that she was compliant at all times during the incident. (Dkt. 1, ¶¶, 7-14). She remained where she was ordered to remain by the Defendant Officers, despite any justification or basis for her seizure and arrest. (Dkt. 1, ¶¶, 12-14). She provided no argument or resistance. (Dkt. 1, ¶¶, 7-14). She continued to remain where she was ordered when the Defendant Officers searched her vehicle and placed her son in handcuffs. (Dkt. 1, ¶, 12). There was no justification for the Defendant Officer to enter her vehicle, drive off in a manner suited to cause her to fall to the ground, and proceed to drive away, leaving her stranded. The Defendant Officers knew what they were doing to this 49 year-old African-American woman, and they knew it was wrong, they just didn't care.

This is excessive force under the 4th Amendment. The law is clear that there need not be a formal arrest of an individual for a 4th Amendment seizure (and a resulting claim of excessive force) to occur. Rather, "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo,* 489 U.S. 593, 596 (U.S. 1989). Thus, "[w]henever an

10

officer restrains the freedom of a person to walk away, he has seized that person." *Id.* At 595 (*quoting Tennessee v. Garner,* 471 U.S. 1 (1985).

### D. Plaintiff's Failure to Intervene Claim

The Seventh Circuit has held that, "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official, *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

In this matter, Plaintiff claims that the Defendant Officers are each liable for failing to intervene to prevent Defendant Officers from violating Plaintiff's constitutional right against (1) unreasonable arrest and seizure, (2) unlawful search of her vehicle, and (3) excessive force. As Plaintiff's constitutional rights against unreasonable arrest and seizure, unlawful search, and excessive force were violated, and as any of the Defendant Officers had a realistic opportunity to prevent the constitutional violation from occurring, Plaintiff's has pled the required elements of failure to intervene. Any of the Defendant Officers had the opportunity during the course of this incident to stop the other Defendant Officer from seizing Plaintiff without probable cause or suspicion of any crime whatsoever, from unlawfully searching her vehicle without a warrant and without consent, and from failing to ensure Plaintiff's safety before driving off in her vehicle and leaving her stranded after falling to the ground and sustaining severe injuries to her head. As such, Plaintiff's failure to intervene claim is valid and must not be dismissed.

### E. Plaintiff's Conspiracy Claim

The Seventh Circuit has held that "[a]lthough conspiracy is not something that Rule 9(b) of the Federal Rules of Civil Procedure requires be proved with particularity, and so a plain and short statement will do….courts require the plaintiff to allege the parties, the general purpose, and the

approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir. 2006) Here, Plaintiff has alleged sufficient facts to establish a claim of conspiracy with respect to Defendants actions and inactions against her on the date of the incident. Plaintiff has alleged facts that would support her claim that the Defendant Officers and the Defendant City engaged in a sequence of events and otherwise agreed and conspired together to violate Plaintiff's constitutional rights. (Dkt. 1, ¶¶, 36-41).

**F. Plaintiff's *Monell* Claim**

Defendants first argue that Plaintiff's Counts I through V must be dismissed as the claim of the constitutional violation and the *Monell* claim rest on separate and distinct facts. This is not true. The facts, as alleged by Plaintiff in her complaint, are the same set of facts for both her claims of constitutional violations and for her claims of municipal liability. This argument is without any merit.

Defendants then go on to argue that Plaintiff's *Monell* claims should be pled with more specificity and that one event does not invoke municipal liability. The Supreme Court of the United States held that *Monell* claims are not subject to a heightened pleading requirement. The Court granted certiorari to "resolve a conflict among the Courts of Appeals concerning the applicability of a heightened pleading standard to § 1983 actions alleging municipal liability." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165 (1993). The Court in *Leatherman* declined to impose a heightened pleading standard with respect to *Monell* claims, holding that "[w]e think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules…" *Id.* at 168.

To maintain a *Monell* claim against Defendant City, Ms. Whitehead-Riles must establish "the alleged constitutional deprivation was pursuant to an 'official policy.'" *Lowe v. Brown,* 896, F.Supp. 793, 794, N.D.Ill. (1995) (*quoting Tapia v. City of Greenwood,* 965 F.2d 336, 338 7th Cir.

(1992)). Where the entity exhibits deliberate indifference to rights of persons through, for example, failure to train, "such an inadequacy can be thought of as …'policy or custom' that is actionable under 1983." *Id.* Here, Ms. Whitehead-Riles has alleged that the City of Chicago has a widespread practice of allowing the types of constitutional violations alleged by Plaintiff to occur despite wrongdoing on behalf of Chicago Police Officers and fails to adequately train, supervise, or discipline its Officers so that these types of actions do not occur.
Plaintiff has adequately pled Monell violations based on the conduct by the Defendant Officers and is entitled to conduct discovery based on such conduct.

## II. Defendant Officers are not entitled to Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Defendants argument for this assertion is that Plaintiff's constitutional rights were not violated and that even if they were qualified immunity shields the Defendants from liability. No further argument or reasoning is given.

The Defendants violated Plaintiff's constitutional rights when they arrested her without probable cause, unlawfully searched her vehicle, used excessive force against her, and were aware of these violations at the time of the incident. Governmental actors performing discretionary functions are entitled to qualified immunity and are "shielded" from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 819 (2001)). The Defendants' argument fails under the two-prong test for qualified immunity enunciated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001). To determine whether the Defendant Officers are entitled to qualified immunity this Court must first establish whether the facts taken in light most favorable to the Plaintiff violated a constitutional right. Second, once a constitutional violation is established, this Court must then determine whether the right was clearly established at the time of the alleged injury. Only if both prongs of the test are satisfied may the official be liable for monetary damages. *Id.* at 200. Plaintiff Kimberley

13

Whitehead-Riles can establish both prongs on all her claims.

### A.  FALSE ARREST

Plaintiff's Complaint alleges that Defendants did not have probable cause to arrest her, and that the Defendant Officers thereby violated her constitutional rights.  If the Defendant officers did have probable cause for her arrest, they would have charged her with a crime; they did not.  Applying the second prong, Defendants knew that effectuating an arrest without probable cause was a clearly established constitutional violation at the time of the incident.

### B.  UNLAWFUL SEARCH

Defendants claim that the vehicle was searched incident to Deaven Riles' arrest. However, the Defendants searched the vehicle before charging him and before he was placed into an officer's vehicle.  If Defendants are to be believed, then Defendants have to admit that Plaintiff was also under arrest as both she and her son were standing with their hands on the vehicle while the vehicle was searched as ordered to by Defendants.

The Defendant Officers in this matter did not, however, search the vehicle incident to Deaven Riles' arrest.  They ordered the occupants out of the vehicle, proceeded to search inside the vehicle, simply, to see if they could find any contraband.  (Dkt. 1, ¶¶, 10-12).  They did not find any contraband, so they proceeded to place Deaven Riles in handcuffs and place him into their police vehicle. (Dkt. 1, ¶, 11).  The search of the vehicle was without consent, without any justifiable basis, and was in violation of Plaintiff's constitutional rights. (Dkt. 1, ¶, 14).  Furthermore, such an unlawful search was and is clearly established.

### C.  EXCESSIVE FORCE

Defendants violated Plaintiff's constitutional right against excessive force at the time they seized her, unlawfully, and proceeded to use excessive force against her during the incident. In this matter, driving away in Plaintiff's vehicle in such a manner as to cause her to fall to the ground and sustain injuries is a violation of Plaintiff's rights that was clearly established as of the time of the

14

incident. The conduct of the Defendant Officers goes beyond the bounds of Plaintiff's clearly established Fourth Amendment rights and thus qualified immunity should be denied to Defendant Officers.

### III. This Court's supplemental jurisdiction over Plaintiff's state law claims is proper

As Plaintiff's federal claims are properly and sufficiently pled before this Court, this Court's supplemental jurisdiction over her state law claims of intentional infliction of emotional distress and *respondeat superior* and indemnification against the City of Chicago are proper.

### V. CONCLUSION

Although the Complaint adequately pleads facts to establish the claims brought by Plaintiff, should this Court determine that the Complaint lacks the requisite specificity, Ms. Whitehead-Riles respectfully requests that she be given leave to amend her Complaint, given the liberal presumption in favor of amendments under Fed. R. Civ. Pro. 15(a), and the fact that there will be no prejudice to Defendants, and no discovery has yet to be undertaken.

RESPECTFULLY SUBMITTED,

/s/ Jeffrey B. Granich
One of Plaintiff's attorneys

JEFFREY B. GRANICH
Law Offices of Jeffrey B. Granich
53 West Jackson, Suite 840
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 620703

15

**CERTIFICATE OF SERVICE**

   I hereby certify that I have caused a true and correct copy of the above and foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** to be delivered via this Court's ECF system to the individuals listed below on this 27th day of June, 2014.

 To:

**Lawrence S. Kowalczyk**
**Megan Kathleen Monaghan**
Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, IL 60604-2827
(312) 540-7000


 /s/ Jeffrey B. Granich
 JEFFREY B. GRANICH